UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JENN-CHING LUO,

                 Plaintiff,

    -against-                   <u>MEMORANDUM & ORDER</u>
                                   12-CV-3073(JS)(AKT)

BALDWIN UNION FREE SCHOOL
DISTRICT and MICHELLE GALLO,

                 Defendants.
--------------------------------X
APPEARANCES
For Plaintiff:        Jenn-Ching Luo, <u>pro se</u>
                    P.O. Box 261
                    Bircheunville, PA 19421

For Defendants:       Jeltje DeJong, Esq.
                    Kelly E. Wright, Esq.
                    Devitt Spellman Barrett, LLP
                    50 Route 111
                    Smithtown, NY 11787

SEYBERT, District Judge:

      <u>Pro</u> <u>se</u> plaintiff Jenn-Ching Luo ("Plaintiff") brought this action to redress perceived shortcomings in the way defendant Baldwin Union Free School District (the "District") and several individual defendants addressed the educational needs of B.L., Plaintiff's disabled child. The remaining defendants are the District and Michelle Gallo, the Director of Pupil Services for the District ("Gallo" and collectively, "Defendants"). Plaintiff claims violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, <u>et</u> <u>seq.</u> ("IDEA"); and Section 1983 of Title 42 of the United States Code, 42 U.S.C. § 1983 ("Section 1983").

Currently pending before the Court are: (1) Plaintiff's motion for reconsideration of the Court's November 13, 2014 Order under Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 (Docket Entry 100), and (2) Defendants' motion for summary judgment (Docket Entry 102). For the following reasons, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

BACKGROUND[1]

The Court assumes familiarity with the background of this case, which is chronicled in its earlier Orders. (See, e.g., Docket Entries 34, 85, 99.) The salient details are discussed below.

I. Factual Background

Plaintiff's child, B.L., has autism and a pervasive developmental disorder with issues in language and communication. (Defs.' 56.1 Stmt., Docket Entry 92-1, ¶ 1.) Since preschool, B.L. had been receiving special education services from the District. (Defs.' 56.1 Stmt. ¶ 2.)

On April 16, 2011, the District's Committee on Special Education ("CSE") met to review B.L.'s progress and to develop an Individualized Education Plan ("IEP") for the 2011-12 school year.[2]

---

[1] The following facts are drawn from Defendants' 56.1 Statement, the Administrative Record, and any other supporting documents.

[2] In New York, the IEP team is referred to as the CSE. See N.Y. EDUC. LAW § 4402(1)(b)(1) (McKinney's 2015).

Ultimately, the CSE recommended that B.L. be placed in an 8:1+1 special class[3] with individual speech therapy five times per week. The CSE also recommended that B.L. receive direct consultant teacher services four times per week in B.L.'s home. (Defs.' 56.1 Stmt. ¶ 3.)

Previously, Plaintiff visited Camphill Special School ("Camphill") in Pennsylvania. (Defs.' 56.1 Stmt. ¶¶ 4, 6.) Plaintiff believed that Camphill was a good fit for B.L., in part, because the school had an open space without school buildings or fences and used natural methods in lieu of Applied Behavioral Analysis ("ABA"). (Defs.' 56.1 Stmt. ¶ 7.)

In May 2011, Plaintiff requested that the District convene a CSE meeting to consider B.L.'s placement in Camphill or a similar special school. (Defs.' 56.1 Stmt. ¶¶ 8, 10; see R. at 1274.)[4] In response, the District scheduled a meeting and told Plaintiff to download a certain list of at least 100 schools approved by New York State. (Defs.' 56.1 Stmt. ¶¶ 11-12.) But Plaintiff did not call or visit any of these schools. (Defs.'

_____

[3] An 8:1+1 special class is one that has a maximum of eight students with one teacher and one paraprofessional. See, e.g., http://www.uft.org/teaching/special-classes.

[4] Due to the volume of documents, Defendants submitted a hard copy of the Administrative Record ("R.") to the Court.

56.1 Stmt. ¶ 15 (citing Pl.'s Dep. 149:24-150:6).)[5]  Instead, he disregarded all of the listed schools, believing that they "'most likely provided ABA which he did not want.'"  (Defs.' 56.1 Stmt. ¶ 14 (quoting Pl.'s Dep. 145:24-146:10).)  Plaintiff had determined that Camphill was the only appropriate school for B.L.  (Defs.' 56.1 Stmt. ¶ 15 (citing Pl.'s Dep. 149:8-16).)

On July 13, 2011, the CSE held another meeting.  (Defs.' 56.1 Stmt. ¶ 18.)  There, Plaintiff learned that the CSE could not send an application to Camphill immediately because the proper procedure was to (1) apply to state approved day schools, (2) apply to in-state residential groups, and (3) then to apply to out-of-state unapproved schools, including Camphill.  (Defs.' 56.1 Stmt. ¶ 19; see R. at 1274.)  The CSE identified potential programs and created a list of twenty-two schools that accepted males with autism in B.L.'s age group.  (Defs.' 56.1 Stmt. ¶ 20.)  Plaintiff was asked to provide his parental consent to allow the District to send an application to each of the listed schools.  (Defs.' 56.1 Stmt. ¶ 21; R. at 1275).

Apparently unsatisfied with the results of the CSE meeting, Plaintiff filed a due process complaint with the New York State Education Department, to enjoin the District from sending

---

[5] Plaintiff's Deposition Transcripts can be found at Docket Entries 102-4 (pp. 1-50); 102-5 (pp. 51-100); 102-6 (pp. 101-150); and 102-7 (pp. 151-201).

applications to the listed schools.  (Defs.' 56.1 Stmt. ¶ 22; see R. at 1.)  A hearing was held, and an independent hearing officer ("IHO") determined that Plaintiff failed to provide sufficient information to the CSE about Camphill's methodology of instruction and the needs of the students who attended.  (Defs.' 56.1 Stmt. ¶ 23.)[6]  The IHO also found that Plaintiff failed to satisfy his burden of showing that Camphill was an appropriate placement for B.L.  (Defs.' 56.1 Stmt. ¶ 23.)  Of particular relevance is that Plaintiff never identified any other students from the District who enrolled in out-of-state unapproved schools at the District's expense.  (Defs.' 56.1 Stmt. ¶ 27; see Pl.'s Resp. to Defs.' 56.1 Stmt., Docket Entry 92-2, ¶ 27.)

Plaintiff then appealed the IHO's decision to the state review officer ("SRO").  (Defs.' 56.1 Stmt. ¶ 24; see R. at 1209-27).  The SRO upheld the decision and dismissed Plaintiff's appeal.  (Defs.' 56.1 Stmt. ¶ 25.)[7]  In September 2012, Plaintiff enrolled B.L. in Camphill at his own expense.  (Defs.' 56.1 Stmt. ¶ 26 (citing Pl.'s Dep. 118:14-18).)

## II.  Procedural History

Plaintiff commenced this action against Defendants on June 20, 2012.  (Compl., Docket Entry 1.)  After extensive motion

---

[6] The decision of the IHO is available at R. 1185-1208.

[7] The decision of the SRO is available at R. 1272-87.

practice, three claims remain: (1) an IDEA claim that Defendants failed to consider information regarding B.L.'s placement at Camphill or a Camphill-like setting and conducted administrative proceedings in which erroneous arguments were made and adopted; (2) an IDEA-based Section 1983 claim that Defendants deprived Plaintiff of his rights under the IDEA for the same reasons; and (3) a <u>Monell</u> claim against the District. (Mar. 2013 Order, Docket Entry 34, at 22.) The Court notes that these claims are similar to claims Plaintiff raised in another case previously before this Court: <u>Luo v. Baldwin Union Free School District, et al.</u>, No. 10-CV-1985, 2011 WL 941263, at *4 (E.D.N.Y. Mar. 15, 2011) ("Luo I").[8] Thus, the Court may periodically refer to its previous rulings in that action.

DISCUSSION

I.  <u>Plaintiff's Motion for Reconsideration</u>

Motions for reconsideration may be brought under Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3. <u>See</u> <u>Wilson v. Pessah</u>, No. 05-CV-3143, 2007 WL 812999, at *2 (E.D.N.Y. Mar. 14, 2007). A motion for reconsideration is appropriate when the moving party believes that the Court overlooked important "'matters or controlling decisions'" that would have influenced the prior decision. <u>Shamis v. Ambassador</u>

---

[8] <u>Luo I</u> involves a previous school year and this current action involves the 2011-12 school year.

Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (quoting LOCAL CIVIL RULE 6.3). Reconsideration is not a proper tool to repackage arguments and issues already considered by the Court in deciding the original motion. United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) (citing PAB Aviation, Inc. v. United States, No. 98-CV-5952, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000)). Nor is it proper to raise new arguments and issues. Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997) (collecting cases). In other words, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court." Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002) (quoting Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)); see also Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (noting that the standard for reconsideration is "strict") (collecting cases).

Plaintiff requests that the Court reconsider its November 13, 2014 Order permitting the District to file its answer after the deadline to do so expired (Nov. 2014 Order, Docket Entry 99). (Pl.'s Recons. Mot., Docket Entry 100, at 1.) Briefly, Plaintiff moved to strike the District's answer for lateness in June 2013. (Pl.'s Mot. to Strike, Docket Entry 63, at 1.) In an Order dated August 12, 2014, the Court denied Plaintiff's motion

7

because the District had appropriately shown good cause and excusable neglect. (Aug. 2014 Order, Docket Entry 91, at *10-12 (finding that the District's untimely answer was due to confusion and that the delay did not prejudice Plaintiff because discovery was ongoing and motions for summary judgment had not yet been filed).) Plaintiff then filed a motion for reconsideration, and the Court denied that motion in its November 2014 Order. (See Nov. 2014 Order.) Plaintiff now seeks reconsideration of the November 2014 Order, arguing that the District's late Answer is inexcusable. (Pl.'s Recons. Mot. at 2.) The Court, however, finds that this argument is meritless, and thus reconsideration is denied.[9]

Simply stated, Plaintiff has not cited any controlling law or factual matters that the Court overlooked. See Wechsler, 186 F. Supp. 2d at 410 (citation omitted). Instead, Plaintiff rehashes the same argument that this Court rejected in its August 2014 Order. See Gross, 2002 WL 32096592, at *4. Thus, Plaintiff's motion for reconsideration is DENIED.

---

[9] The Court notes that in his letter, Plaintiff uses offensive and insulting language. The Court warns Plaintiff that he will be subject to sanctions if he continues to disparage the Court in any subsequent matters.

II.  Defendants' Motion for Summary Judgment

     A.  Legal Standard

          Summary judgment is appropriate where "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  FED. R. CIV.
P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-
48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); Celotex
Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.
Ed. 2d 265 (1986).  "In assessing the record to determine whether
there is a genuine issue to be tried as to any material fact, the
court is required to resolve all ambiguities and draw all
permissible factual inferences in favor of the party against whom
summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d
130, 134 (2d Cir. 1997).

          "The burden of showing the absence of any genuine dispute
as to a material fact rests on the party seeking summary judgment."
Id.; see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct.
1598, 1608, 26 L. Ed. 2d 142 (1970).  A genuine factual issue
exists if "the evidence is such that a reasonable jury could return
a verdict for the nonmoving party."  Anderson, 477 U.S. at 248,
106 S. Ct. at 2510.  To defeat summary judgment, "the non-movant
must 'set forth specific facts showing that there is a genuine
issue for trial.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41
(2d Cir. 2000) (quoting Anderson, 477 U.S. at 256).  "[M]ere

speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citation omitted); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.") (citations omitted).

Because Plaintiff is litigating pro se, the Court reads his Complaint liberally and interprets his papers to "raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (collecting cases).

B.   IDEA Claims

Plaintiff argues that the District: (1) failed to consider information regarding a Camphill-like setting and thus deprived Plaintiff of "a meaningful opportunity to recommend an educational placement" for B.L. and (2) "conduct[ed] administrative proceedings in which erroneous arguments were made and adopted." (Pl.'s Letter, Docket Entry 103, at 1.)  The Court finds that these arguments are meritless.

As an initial matter, a district court's role in "'reviewing state educational decisions under the IDEA is circumscribed.'" T.Y. & K.Y. ex rel. T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (quoting Gagliardo v.

Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)).

Indeed, the Court "'must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Id. (quoting A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 171 (2d Cir. 2009)). "Therefore, as the Supreme Court has concluded, courts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" Id. (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)).

The Court also acknowledges that IDEA claims can often be resolved at the summary judgment stage because the Court must afford a certain degree of deference to the administrative findings. See id. at 418. In fact, "[u]nlike with an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment in the IDEA context." J.S. v. Scarsdale Union Free Sch. Dist., 826 F. Supp. 2d 635, 658 (S.D.N.Y. 2011) (citations omitted). "Instead, summary judgment in IDEA cases such as this is 'in substance an appeal from an administrative determination, not a summary judgment.'" Id. (quoting Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005)). The

Court has reviewed the administrative findings in this case and concludes that Plaintiff's claims are meritless.

### 1. Failure to Consider a Camphill-Like Setting

As noted above, Plaintiff's first argument is that the District committed a procedural violation under the IDEA when it failed to consider a Camphill-like setting and thus impeded Plaintiff's ability to participate in the decision-making process. (Pl.'s Letter at 1.) Based on the administrative record, however, the Court finds that this argument is unpersuasive.

Congress enacted the IDEA "to ensure that all children with disabilities are provided a free appropriate public education" ("FAPE") and "to assure that the rights of such children and their parents or guardians are protected." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239, 129 S. Ct. 2484, 2491, 174 L. Ed. 2d 168 (2009) (internal quotation marks, alteration, and citation omitted); see also 20 U.S.C. § 1412(a)(1) (noting that the IDEA offers federal funding to states that provide a FAPE to children with disabilities). The term FAPE means "special education and related services," including preschool, elementary school, and secondary school, 20 U.S.C. § 1401(9), that is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." Rowley, 458 U.S. at 204, 102 S. Ct. at 3049. It is important to note that the "IDEA does not itself articulate any specific level of educational benefits that

must be provided . . . ," Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998), and not every procedural inadequacy deprives a student of a FAPE. A.C. ex rel. M.C. v. Bd. of Educ. of The Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 (2d Cir. 2009) (citing Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 (2d Cir. 2003)).  Sure enough, procedural violations amount to a denial of a FAPE in three situations:

> [I]f the procedural inadequacies--
>
> > (I) impeded the child's right to a free appropriate public education;
> >
> > (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
> >
> > (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii); accord Scruggs v. Meriden Bd. of Educ., No. 03-CV-2224, 2007 WL 2318851, at *10 (D. Conn. Aug. 10, 2007) ("A FAPE denial has occurred where procedural irregularities result in the loss of educational opportunity or seriously infringe upon the parent's opportunity to participate in the development or formulation of the IEP.") (citation omitted).  Moreover, section 1414(b)(2) of the IDEA describes which factors must be considered when developing a FAPE for a specific child:

> In conducting the evaluation, the local educational agency shall--

> (A) use a variety of assessment tools and
> strategies to gather relevant functional,
> developmental, and academic information,
> including information provided by the parent,
> that may assist in determining--
>
>> (i) whether the child is a child with a
>> disability; and
>>
>> (ii) the content of the child's
>> individualized education program,
>> including information related to
>> enabling the child to be involved in and
>> progress in the general education
>> curriculum, or, for preschool children,
>> to participate in appropriate
>> activities;
>
> (B) not use any single measure or assessment
> as the sole criterion for determining whether
> a child is a child with a disability or
> determining an appropriate educational
> program for the child; and
>
> (C) use technically sound instruments that may
> assess the relative contribution of cognitive
> and behavioral factors, in addition to
> physical or developmental factors.

20 U.S.C. § 1414(b)(2).

Plaintiff argues that the CSE failed to consider important factors, including B.L.'s physical condition and his social and cultural background. (Pl.'s Letter at 3.) The Court disagrees. The CSE considered a litany of factors, including "parent observations, annual review recommendations from [B.L.'s "language, speech, and hearing"] teacher, progress summaries from [B.L.'s] classroom teacher and consultant teacher, an independent speech-language evaluation," a Board of Cooperative Educational

Services evaluation, standardized testing results, and a February 2009 psychoeducational evaluation. (See R. at 1282.) And the CSE meeting was attended by a number of individuals who are knowledgeable about B.L. and his condition, including "the CSE chairperson, a psychologist, a regular education teacher, [B.L.'s] special education teacher, his speech-language therapist, an occupational therapist," and Plaintiff himself. (R. at 1282); see also 34 C.F.R. § 104.35(c) (describing the placement procedures and requiring, in part, "that the placement decision [be] made by a group of persons, including persons knowledgeable about the child").

Plaintiff also cites 34 C.F.R. § 104.34 to discuss the educational placement of B.L., (Pl.'s Letter at 2), but that section supports Defendants, not Plaintiff. 34 C.F.R. § 104.34 provides that:

> A [school] shall educate, or shall provide for the education of, each qualified handicapped person in its jurisdiction . . . to the maximum extent appropriate to the needs of the handicapped person. A [school] shall place a handicapped person in the regular educational environment operated by the [school] unless it is demonstrated by the [school] that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily. Whenever a [school] places a person in a setting other than the regular educational environment . . . it shall take into account the proximity of the alternate setting to the person's home.

34 C.F.R. § 104.34(a). Thus, as Defendants correctly note, "there is a recognized preference for educating special education students in their home District." (Defs.' Reply Br., Docket Entry 104-1, at 5.) And despite Plaintiff's arguments to the contrary, Camphill was considered. But the CSE advised Plaintiff that they had to first apply to in-state programs and then out-of-state approved programs before applying to Camphill or a Camphill-like setting, which are out-of-state unapproved programs. (See Defs.' 56.1 Stmt. ¶¶ 9, 19; R. at 1274). And the CSE identified twenty-two out-of-District schools that would provide B.L. with a FAPE. (Defs.' 56.1 Stmt. ¶ 20.) All in all, Plaintiff has a procedural right in the educational placement of his child but not a specific location, such as Camphill. See F.L. ex rel. F.L. v. N.Y. City Dep't of Educ., No. 11-CV-5131, 2012 WL 4891748, at *11 (S.D.N.Y. Oct. 16, 2012) ("Parents are entitled to participate in any decision regarding the educational placement of their child. Parents are not, however, procedurally entitled to participate in the decision regarding school placement.") (citing T.Y., 584 F.3d at 420).

It appears that Plaintiff could only be satisfied with Camphill. In fact, he refused to visit other schools because "[n]o one is similar to Camphill." (Pl.'s Dep. 145:22-23.) But the IDEA only guarantees an "appropriate" education, "not one that provides everything that might be thought desirable by loving

parents." <u>Walczak</u>, 142 F. 3d at 132 (internal quotation marks and citation omitted).  Based on the thorough administrative record, the Court endorses the decision of the SRO and rejects this portion of Plaintiff's IDEA claim.  <u>Id.</u> at 129 ("Deference is particularly appropriate when, as here, the [SRO's] review has been thorough and careful.").

### 2.  Administrative Proceedings in Which Erroneous Arguments Were Made and Adopted

Plaintiff's second argument, construed liberally, relates to Dr. John Suozzi's psychoeducational report dated February 2, 2009 (the "Suozzi Evaluation")[10].  (<u>See</u> Pl.'s Letter at 3; <u>see</u> <u>also</u> R. at 1278-80 (discussing how Plaintiff appears to be relitigating the appropriateness of the Suozzi Evaluation).) In opposition, Defendants argue, and the Court agrees, that collateral estoppel prevents Plaintiff from litigating this issue. (Defs.' Br., Docket Entry 102-10, at 15-16.)

The doctrine of res judicata, or claim preclusion, prevents parties from "'relitigating issues that were or could have been raised'" in a prior proceeding.  <u>Monahan v. N.Y. City Dep't of Corr.</u>, 214 F.3d 275, 284-85 (2d Cir. 2000) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980)).  Courts in this Circuit have applied the doctrine to

---

[10] The Suozzi Evaluation dated February 2, 2009 is available at R. 341-51.

"administrative proceedings when the agency is acting in a judicial capacity."  K.B. v. Pearl River Union Free Sch. Dist., No. 10-CV-9170, 2012 WL 234392, at *5 (S.D.N.Y. Jan. 13, 2012) (collecting cases).

The related doctrine of collateral estoppel precludes parties from relitigating a "legal or factual issue already decided in an earlier proceeding."  Perez v. Danbury Hosp., 347 F.3d 419, 426 (2d Cir. 2003) (citing Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998)).  To find collateral estoppel, four factors must be met:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Grenon v. Taconic Hills Cent. Sch. Dist., No. 05-CV-1109, 2006 WL 3751450, at *6 (N.D.N.Y. Dec. 19, 2006) (internal quotation marks and citations omitted).

Plaintiff is merely repackaging the same arguments already rejected by this Court in Luo I, even though they relate to a different school year.  Luo I, 2012 WL 728173, at *7; (see also R. at 1279 ("Although [Plaintiff] had not previously asserted the claim . . . for the 2011-12 school year, [Plaintiff] is basing his claim in part on the assertion that the 2009 psychoeducational

evaluation was inappropriate . . . .).)  In its March 5, 2012
Order, the Court endorsed the decision of the IHO and SRO finding
that "Suozzi gathered adequate, relevant information about B.L."
Id. at *5 (citation omitted).  Plaintiff, a party in Luo I, had a
full and fair opportunity to litigate the issue, and resolution of
that issue was necessary to support a final judgment on the merits.
As a result, all four factors have been met, and collateral
estoppel precludes Plaintiff from relitigating this issue.  Perez,
347 F.3d at 426.  Thus, Defendants' motion for summary judgment is
GRANTED as to Plaintiff's IDEA claims.

C.  IDEA-Based Section 1983 Claims

Next, Defendants move for summary judgment on
Plaintiff's IDEA-based Section 1983 claims.  (Defs.' Br. at 14-
20.)  Plaintiff's opposition letter, construed liberally, appears
to assert claims related to B.L.'s placement in Camphill or a
Camphill-like setting and the allegedly flawed administrative
proceedings.  (Pl.'s Letter at 1.)

Section 1983 provides a means for redress for
constitutional violations by a person acting under color of state
law.  The statute states, in pertinent part, that:

> [e]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,

> privileges or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law.

42 U.S.C. § 1983.  To state a claim under this law, a plaintiff must allege: (1) that the defendant acted under color of state law and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999).  If an IDEA claim and an IDEA-based Section 1983 claim are brought simultaneously, a plaintiff must prove that a constitutional violation occurred "outside the scope of the IDEA."  Evans v. Bd. of Educ. of Rhinebeck Cent. Sch. Dist., 930 F. Supp. 83, 102-103 (S.D.N.Y. 1996) (citing Bonar v. Ambach, 771 F.2d 14, 18 (2d Cir. 1985)).

But Plaintiff has not done so.  The record indicates that the claims are duplicitous, and Plaintiff has not proven a constitutional violation "outside the scope of the IDEA."  Id.  As a result, since Plaintiff's IDEA claims have been dismissed, his Section 1983 claims for IDEA violations must fail as well.  See Streck v. Bd. of Educ. of E. Greenbush Sch. Dist., 280 F. App'x 66, 68 (2d Cir. 2008) ("Plaintiffs fail to allege a denial of procedural safeguards or administrative remedies; they were afforded a hearing before an impartial hearing officer and review by [an SRO].  Therefore, plaintiffs may not rely on § 1983 to

pursue monetary damages for violations of the IDEA.") (collecting cases). Thus, Defendants' motion for summary judgment is GRANTED as to Plaintiff's IDEA-based Section 1983 claims.

D. Municipal Liability under Section 1983

Finally, Defendants move for summary judgment on Plaintiff's additional Section 1983 claim against the District for municipal liability under Monell. (Defs.' Br. at 20-22.) Plaintiff alleges that the District had a policy of circulating a flawed evaluation report and depriving B.L. of a FAPE. (Compl. at ¶¶ 32-37.) Defendants argue in opposition that Plaintiff has failed to raise an issue of fact that a policy or custom existed. (Defs.' Br. at 21-22.) The Court agrees.

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "an injury to a constitutionally protected right . . . that . . . 'was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy.'" Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008)); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978). "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local

21

governments under <u>Monell</u>." <u>Booker v. Bd. of Educ.</u>, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002) (citing <u>Monell</u>, 436 U.S. at 696-97, 98 S. Ct. at 2039).

Although a policy or custom need not be explicitly stated, <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996) (citing <u>Sorlucco v. N.Y. City Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992)), isolated incidents will not suffice. <u>See</u> <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985). Rather, a plaintiff may provide circumstantial evidence that "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" <u>Kern</u>, 93 F.3d at 44 (quoting <u>Ricciuti v. N.Y. City Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991)). Put another way, the "discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." <u>Sorlucco</u>, 971 F.2d at 871 (citations omitted).

Here, Plaintiff has not provided any evidence that the District had a policy of circulating a flawed evaluation report and depriving B.L. of a FAPE. <u>See, e.g.</u>, <u>Green v. City of N.Y.</u>, No. 06-CV-1836, 2009 WL 3319356, at *7 (E.D.N.Y. Oct. 14, 2009) (granting summary judgment where plaintiff's "conclusory allegations" did not support the existence of a policy or practice adopted by the defendant); <u>Torino v. Rieppel</u>, No. 07-CV-1929, 2009

WL 3259429, at *9 (E.D.N.Y. Oct. 8, 2009) (granting summary judgment because the plaintiffs "provided no evidence whatsoever that the [defendant] had a policy, custom, or practice of allowing the alleged constitutional violations") (citations omitted). In fact, Plaintiff does not even address this argument in his opposition papers. (See generally Pl.'s Letter.) As Defendants aptly note, Plaintiff failed to identify "any other persons who were treated more favorably" or "any persons who were similarly treated so as to support a finding that the District had a policy or practice of depriving students of a FAPE." (Defs.' Reply Br. at 1.) Thus, Defendants' motion for summary judgment is GRANTED as to Plaintiff's Section 1983 Monell claim.

## III. Litigation Injunction

Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192 F.3d 259, 261 (2d Cir. 1999) (citation omitted). But even when a sua sponte injunction is warranted, the Court must provide plaintiff "with notice and an opportunity to be heard" before imposing a filing injunction. Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam) (collecting cases).

Plaintiff's course of conduct suggests that he may file a motion for reconsideration to this Order. (See, e.g., Docket Entries 37, 94, 100.) Plaintiff's continued filing of these motions constitutes an abuse of the judicial process. The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F. 3d 121, 123 (2d Cir. 2000) (brackets, internal quotation marks and citation omitted). The Court warns Plaintiff that similar, future motions for reconsideration will not be tolerated. If Plaintiff persists in this course of action, the Court will require that Plaintiff first seek leave of the Court before submitting such filings. Finally, Plaintiff is cautioned that Rule 11 of the Federal Rule of Civil Procedure applies to pro se litigants, see Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants."), and should he file another frivolous motion, it is within the Court's authority to consider imposing sanctions upon him. See FED. R. CIV. P. 11.

## CONCLUSION

Plaintiff's motion for reconsideration (Docket Entry 100) is DENIED, and Defendants' motion for summary judgment (Docket Entry 102) is GRANTED. The Court warns Plaintiff that if he

continues to file frivolous motions for reconsideration, the Court will impose sanctions or require Plaintiff to seek leave of the Court before submitting such filings.

The Court certifies that under 29 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith, and thus in forma pauperis status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 443-45, 82 S. Ct. 917, 919-21, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mark this matter CLOSED and mail a copy of this Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    January  12 , 2016
          Central Islip, New York